The Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Richard Chambers Courthouse here at the U.S. Court of Appeals here in Pasadena. It's a pleasure to be here this morning. We have a number of cases set on our docket. The first one, Angel Omar Olivares Acevedo v. Pamela Bondi has been submitted on the briefs. The next case, Gregorio Daniel Lara-Rodriguez v. Pamela Bondi is set for oral argument. And so if counsel are ready to proceed, I know we have someone appearing by video. You may begin. Yes, good morning, your honors. May it please the court, Menor Ateas for Petitioner Gregorio Lara-Rodriguez. This court has jurisdiction to review a final order of removal under 8 U.S.C. 1252. This court has held it has jurisdiction to review administrative closure decisions by the BIA per Gonzales Caraveo v. Sessions. This court should find on de novo review that petitioner warrants remand to the agency for administrative closure of removal proceedings to file an I-601A provisional waiver with the United States Citizenship and Immigration Services. Petitioner is the holder of an approved immigrant visa petition filed by his U.S. citizen wife. During his proceedings, petitioner could only seek relief in the form of cancellation of removal. During his appeal, the attorney general vacated EOIR precedent, which had prevented petitioner from seeking administrative closure. So, counsel, putting aside the standard of review in your motion to administratively close proceedings, did you ever tell the BIA that one of the reasons they should administratively close the case because you wanted to seek the 601A waiver? Your Honor, at the time, the waiver question was not yet right. At the time, the administrative closure was sought to allow adjudication of the I-130 with USCIS. And in fact, you told the BIA that your client didn't have an unlawful entry bar, which would have meant, as the government has pointed out, that he didn't need the 601A waiver, right? He didn't have a bar as far as having the more than one illegal entry, Your Honor. So how did the BIA abuse its discretion by not considering an argument your client never made? Your Honor, the BIA did not address all the multiple factors set out in its own precedent for administrative closure. Had the board reviewed those factors, it could have considered, among other factors, that 8 CFR section 212.7E43 requires administrative closure of pending removal proceedings for a petitioner to pursue a provisional I-601A waiver with USCIS. No, but your client didn't tell the board that he was going to pursue a 601A waiver, did he? Not in the motion, Your Honor. It has been part of the record. It's illogical to assume an I-130 petition is filed and then nothing will happen with it once it's approved. Ms. Tejas, what did you mean, or I guess what should we read the motion to mean by saying that respondent does not have an unlawful entry bar? What was the point of raising that in the motion? The attorney was stating that he is eligible for consular process adjustment of status. He didn't have a bar as far as more than one illegal entry. The waiver only forgives the one illegal entry. So in your view, what's the best case or in support of your argument that the BIA abused its discretion? Your Honor, the BIA providing as the basis for denial of a motion the very thing it controls eligibility to file a 601A waiver with USCIS, it's fundamentally unfair. It has the power to deny the motion, but it also has the power to provide the relief sought. He put our client in a catch-22. The BIA put our client in a catch-22. I guess back to the unlawful entry bar, what you're really talking about is that there's no unlawful re-entry bar because your client's status, while not able to apply for adjustment of status because your client didn't have status, usually we refer to that as an unlawful presence question. And it's the unlawful presence that does not bar, notwithstanding the unlawful presence, that does not bar the 601A waiver. Would that be a better way of putting it? That's correct, Your Honor. I would agree that the wording wasn't succinct enough. But you also specifically told the agency at AR-15 administrative closure is sought in this case because respondent qualifies for alternate relief adjustment of status through the consular process. That is the only basis that you put in the motion, right? That's correct, Your Honor. So it's really just consular processes, and the IJ also made that same confusion by calling it adjustment of status. But you'd say now, looking at the record, the petitioner had no status to adjust. It was purely a matter of consular process to be done in the home country, either with the 601A waiver process or through normal consular process and the delays that that would incur. Is that right? That's correct. But the goal of that consular process is to adjust status to a lawful permanent resident. Okay. But the petitioner has no—usually adjustment of status is where—the reason it happens in the country is because petitioner has some lawful status. And we typically use—the consular process is for the instance that your petitioner is in, right? That is correct, Your Honor. Okay. Thank you. Do you want to reserve the balance of your time, counsel? I'm going to reserve two minutes, Your Honors. The BIA failed to provide a reasoned explanation for its actions. The statutes, regulations, administrative, and judicial laws of the United States support individuals like him with United States citizen families who depend on them and have facts like this. The consequences of denying Mr. Lara Rodriguez's motion for administrative closure are fundamentally unfair, and this matter should be remanded for a proper analysis of the advocacy and factors. And I'll reserve the rest of my time, Your Honors. Thank you. Good morning, Your Honors, and may it please the court. I'm Lauren Tacklett, representing the Attorney General. The court's review here is narrow. The court need only assess whether the agency abused its discretion by failing to consider the relevant advocacy and factors. The agency did not abuse its discretion. Petitioner moved for administrative closure while his I-130 was pending. When the board ruled on petitioner's motion, his I-130 had been approved for two years. The board correctly noted that he could consular process independent of these removal proceedings. But is there any other reason for a petitioner to move for administrative closure in this procedural posture other than to get a 601 waiver? So just to be clear, a 601A waiver could still be obtained without administrative closure, even with a final order of removal. If you look at 8 CFR 212.7E44, so one subsection down from what petitioner is relying on in their motion, even with a final order of removal, a 601A waiver can be obtained. Well, but wasn't the government's position, in fact, in opposing the hardship determination that petitioner could and should seek a 601A waiver? The government did acknowledge that that was one way to do it. Well, it wasn't just an acknowledgment. It was an argument that there was no hardship because it would only have to be a temporary separation from the husband. Exactly. And the government is still maintaining that he can get a 601A waiver via a final order of removal through the subsection 4 process. But the government didn't oppose the administrative closure at the BIA? The government did not make its position clear one way or another. It did not respond. Well, after having made its position clear, arguably in front of the IJ, it said nothing to the BIA to change that impression. I think there's an important distinction between its position on cancellation of removal versus a separate motion at the board on administrative closure. But noting that DHS did not make its position clear one way or another, and that can be interpreted either as not opposing or as the opposition being self-evident. DHS chooses to remove people that are here illegally. But the BIA did note that the government didn't file an opposition and it listed and went through the factors. Correct. Where did it note that? On AR3, it specifically says that DHS did not respond to either the appeal or to the motion for it. That was in the procedural history?  Yes. But it never stated that it opposed it or the basis for its opposition to it? No, it did not include that in its recitation of this. Isn't that required? Isn't that an important, in fact, the primary factor that courts have looked at? So one thing to note is that this factor that Your Honor alludes to with WIU, it potentially isn't even relevant here. That case may only apply given a stated opposition where there is no position stated one way or another. It may not be relevant for consideration. However, that's an interesting reading. I would point Your Honor to footnote 5 of WIU. That does make a point on when that case is relevant. But even if you were not correct on that, the BIA listed this as one of the factors and it cited the WIU case right afterward. Correct. Yes. But it didn't state in the listing the argument that it's opposed? No, it did not in that section. I think the most important thing to the Board was the weight given more to factors 1 and 6 about that he can consular process independent of these removal proceedings. And while that may be a primary factor, it is still a totality of the circumstances argument or consideration. And the Board is free to make those types of weighing judgments. Ms. Tacklett, but I guess you see my problem at least is that, of course, if it meant that the petitioner was going to have to go through just a normal consular process without the 601A waiver, does that not change the hardship analysis below as the government seemed to have put it? So it seems like the petitioner is being whipsawed a bit here. I think the important thing to note is that it doesn't change. Administrative closure does not change the 601A analysis because petitioner can seek a 601A waiver irrespective of whether or not they have a final order of removal. There's just one more step under that subsection 4. But petitioner, I mean, in terms of the differences here between the two processes, that extra step is what? Walk me through that. It's an additional waiver that they have to seek before they can apply for the 601A waiver. So it's a waiver of the inadmissibility ground on, I'll give you the site, but it's 8 USC 1182 A9 A1. And that's inadmissibility ground for prior removal. And that was never sought? And no. And that's another important thing to consider here, Your Honors, is that, you know, petitioners never provided any sort of update to the board. They didn't notify the board that their petition had been approved. They didn't notify them that they were trying to seek any sort of continued process for all the board knew petitioners had given up and decided to go home to Mexico. The board said that, right? The respondent does not identify any petition application or other action. He is currently and actively seeking outside of his removal proceeding. Exactly. The actively proceeding is important there. He certainly could have. Correct. Let me make sure. Are you saying that administrative closure is not a prerequisite to applying for an I-601A waiver? I am to the extent there is then a final order of removal. So while a petitioner is in or an applicant is in removal proceedings, they cannot apply for a 601A waiver without administrative closure. However, once those proceedings have finished, once there is a final order of removal, there is still a alternative way to get a 601A waiver. And that's through the subsection 4 process with getting an additional waiver before seeking the 601A. And that's Romanet 4? Correct. Where did you make this argument in your brief? I did not make it in my brief, but we were simply responding to petitioners' points on their unexhausted arguments on a 601A waiver that, you know, had not been brought up before the board. This other waiver, would that also just require the petitioner to leave very temporarily to pick up his documents in Mexico and return with that? You would seek the first waiver before even leaving the country. So you'd get the first waiver, and then— Say the first waiver. I want to make sure I understand what the first waiver— The waiver of the admissibility for removal. It's to apply for—apologies, I would need to pull up my actual reg to give you the exact application, but it is— A provisional unlawful presence waiver. No, so that's the 601A. The one before is for—apply for readmission. That's the first. And the record before the BIA, does that include what happened before the IJ? The record before the board does include everything that happened below, yes. And so despite—I guess I just want to understand the government's position here. So despite the petitioner being quite clear, it seems like, to the IJ that it was definitely trying to seek administrative closure and for the reason of applying for I-601A waiver, what do we do with that? I would dispute that they were clear about seeking administrative closure. They acknowledged the possibility of a 601A waiver, but did not discuss administrative closure per se. That's at AR-96. Apologies. Even if they had discussed administrative closure, it is important to note that the board is not required to comb through the record. It's not—I believe this court has a saying about truffle hunting and pigs. They're not required to do that type of detailed review of the record to ascertain what petitioner is seeking in the new motion. For all they know, they decided to do something different. All I saw at AR-96 was the statement, yes, I don't know if you wanted to give a continuance for the filing of an I-130 with its approval. He would be eligible for the 601-601A unlawful presence waiver in consular process, but I didn't see in there saying anything that we're going to do it. Thank you. I didn't think he had mentioned administrative closure per se.   Thank you. Is there any other reason why he would be seeking the I-601A waiver? That's what's kind of a little befuddled because why else would you seek that for someone in his position? Just to clarify the question, you mean why is he seeking administrative closure if not for—  His request for the I-601A waiver. What other purpose, considering his circumstances, would he be seeking that? I think it's important to note that at the time he filed the motion, it was only—as Petitioner's Counsel noted, an I-601A waiver wasn't even ripe. He was seeking— How about at the time, though, the BIA was deciding this case? The BIA was deciding the motion before it, and the motion before it was about seeking I-130 approval, and the board properly exercised its discretion in considering the motion that was before it. And your best case? I would probably— Especially in light of WIU. What's the best counter to that, I guess? So I would point to three cases, Your Honor, if I feel allow. Gonzales-Caraveo, where this court made its decision in terms of jurisdiction, but it specifically noted that the issue there was that the board thought it didn't have any sort of independent review, and that was not accurate. But it did not fault the board for not considering all factors, similar to Marquez-Reyes, which is 36F4-1209, at 1209, noting that failure to consider one of the Abbottizian factors is not fatal to the abuse of discretion analysis. And perhaps also I'll throw in there a case that was decided on the day that we submitted our brief, which is Bangu v. Garland. It's number 23-4224 and cited at 2024 Westlaw 4502-10-4. Since this other waiver wasn't presented in your brief, and you may have reason why you didn't present that, I'm just curious, could the petitioner here have applied for the relief that you said? From here, would he have to be in Mexico for 10 years? No. He applies for the first waiver, which is the seeking readmission, and that happens here. You apply for the 601A waiver with that already approved, and then you go to Mexico. You consular process through the normal 601A proceedings. So you wouldn't have the 10-year bar? Assuming he gets the approval for the waiver of the 10-year bar, correct? That's what the 601A would waive. No, I know that's what the 601... Okay, thank you. I guess, yeah, my concern, so we don't set up perhaps a similar situation that petitioner finds himself in here, is does the government see any reason to oppose now, here, following through the Romanet IV process if petitioner pursued that? I mean, you're laying it out here, but of course the government laid it out in front of the IJ to pursue the Romanet III process, arguably. So I guess we need to know whether we can depend and the petitioner can rely on the government's position today, this time, that that path is available to petitioner given that the visa has been granted. Can you do that? I can say that that path is available. I obviously can't commit to any actual outcomes in that path. But I think you've answered my colleague's question. You're an officer of the court and a representative of the government. You've brought this up for the first time, and you're saying that path is available to this petitioner, and then if it's followed through on, then it'll be looked at in the normal course, but it's available. Correct. My time is well over unless there's another question. I do have another question. What mechanism would have been available for the petitioner to update or to the board, as was suggested? The board allows supplemental motions, letters, etc., similar to this court and other courts. So they could have filed a letter. They could have filed a supplemental motion. There were other mechanisms. Thank you. Yes, thank you. Ms. Tejas, can you respond to some of these points that the government has made through Ms. Taslitz's arguments here? Yes, Your Honor. All of these waivers take years and years and years and years. To add one more step that will take so many years for this young man, it's illogical being that he meets all of the advocacy and factors. His matter doesn't – shouldn't meet. We shouldn't be here. And I can also speak to the delay that counsel is talking about at the BIA. It is our experience that the BIA takes several years to rule on motions. We did not – Ms. Tejas, why then did you not take the opportunity to update the BIA on the status of the visa and clarify that the 601A was, in fact, what the petitioner was seeking? Well, Your Honor, to be honest, because this case does meet all the advocacy and factors, we did not expect the BIA to not do a thorough evaluation of this case. It's obvious that administrative closure is sought so that Mr. Lado Rodriguez can file his I-601A waiver. What else would he need the I-134? There was no opposition to administrative closure. It's very likely the waiver would be granted. He's eligible for the relief sought. He himself has caused no delays, and the closure will only be for the time the waiver is adjudicated. The department is – they have access to all that information. They know when things are granted. You know, termination would then be sought. The BIA did not conduct a full analysis of the advocacy and factors. And additionally, the BIA ignored that Congress authorized for individuals like Mr. Lado Rodriguez with United States family members to have said relief available. The fact that he is now, like I said earlier, in a catch-22 is egregious. This young man should not be in this position. The BIA, you know, it faulted him for not having the waiver, but he can't get the waiver with removal proceedings not administratively closed. So there was, in your view, no reason why your client in his counseled motion or supplement should have updated the BIA on what he had done and what he hadn't done because they could have gone looking and found it out themselves if they'd really wanted to, and you didn't have a responsibility to give them that info. Your Honor, again, there would be no reason for an I-130 without that second step of the I-601A waiver. The record has that information in it. It's illogical to think that this young man would spend money and time on an I-130 just to have an I-130. And the filing was right after the government had changed its policy with respect to the waivers and administrative closure. And so far, the government hasn't given them any other reason why your client would have applied for administrative closure in this posture, right? Correct. All right. Thank you very much, Ms. Tejas. Ms. Tasla, I appreciate your oral argument presentations here in this case. The case of Gregorio Daniel Lara Rodriguez v. Pamela Bondi is now submitted.
judges: MURGUIA, BENNETT, JOHNSTONE